UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL BRANNIGAN,
ATTORNEY-IN-FACT FOR
PATIENT K.P.,

       Plaintiff,

v.                                            Case No. 8:21-cv-2353-KKM-SPF

ANTHEM INSURANCE COMPANIES,
INC., d/b/a ANTHEM BLUE CROSS
AND BLUE SHIELD,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

In this one-count Employee Retirement Income Security Act of 1974 ("ERISA") case, Plaintiff Michael Brannigan, as attorney-in-fact for patient K.P., sues Defendant Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem") over its failure to reimburse K.P. for the cost of her air ambulance evacuation from the Dominican Republic to a level-one trauma center in Fort Lauderdale, Florida, after K.P. suffered a heart attack aboard a Carnival cruise ship (*see* Doc. 38). Before the Court is Anthem's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 43), Plaintiff's Memorandum of Law in Opposition (Doc. 44), and Plaintiff's Supplemental Notice (Doc. 59). The undersigned held a hearing on the motion on November 3, 2022 (*see* Doc. 57). Upon consideration of the parties' filings and the arguments presented at the hearing, the undersigned recommends that

Defendant's motion to dismiss be denied, its motion to transfer be granted, and this case be transferred to the Southern District of Indiana.

## I. BACKGROUND[1]

K.P. is beneficiary under a health plan (the "Plan" or the "Certificate") administered by Anthem (a Blue Cross Blue Shield licensee) and governed by ERISA (Doc. 38 ("Am. Compl.") at ¶¶ 1-2).[2] On August 13, 2019, K.P. suffered a heart attack while onboard a cruise ship (*Id.* at ¶ 2). The ship's physician recommended K.P. be evacuated to a level one trauma center (*Id.* at ¶ 19). Worldwide Aircraft Services, Inc. d/b/a Jet ICU ("Jet ICU") was the on-call jet ambulance service for the cruise line, and it evacuated K.P. from LaRomana, the Dominican Republic port, to Broward Health Medical Center in Fort Lauderdale (*Id.* at ¶ 16-18).

Jet ICU submitted an invoice on a CMS-1500 form to Anthem, who reimbursed it for the ground transportation services it provided K.P. from the Ft. Lauderdale airport to the hospital but not for its air ambulance services to the Ft. Lauderdale airport (*Id.* at ¶¶ 3, 8). In December 2020, Anthem denied K.P.'s appeal and refused to pay the outstanding $237,770 in air ambulance fees because – the insurer reasoned – there are hospitals in the Dominican Republic that could have treated her, rendering the air evacuation medically unnecessary (*Id.* at ¶¶ 3-5). Anthem's denial stated:

---

[1] These background facts are alleged in Plaintiff's Amended Complaint (Doc. 38), and the Court accepts them as true in ruling on Anthem's motion to dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994 (11th Cir. 1983).

[2] Defendant Anthem is a subsidiary of non-party Anthem, Inc. (Doc. 43, Exh. 1 at ¶ 1).

> [Y]our doctor ordered travel to the United States from the Dominican Republic (air ambulance transport). The information we have shows that you were having heart problems. The plan criterion considers the transport to be medically necessary when the care you need cannot be given where you were. Your request does not show this. There were hospitals in the Dominican Republic that were able to provide the care that you needed. Moving you closer to home will not improve your care. For this reason, this request is denied as not medically necessary.

The cost of Jet ICU's air ambulance services remains unpaid (*Id.* at ¶ 9).[3]

K.P. is a South Carolina resident. After Anthem denied her appeal, she executed a power of attorney appointing Michael Brannigan as her attorney-in-fact with respect to claims and litigation regarding her outstanding debt to Jet ICU (*Id.* at ¶ 36; Doc. 20-2).[4] In October 2021, Brannigan sued Indiana-based Anthem in the Middle District of Florida for reimbursement of Jet ICU's air ambulance services under ERISA.[5] Plaintiff

---

[3] Plaintiff alleges K.P. exhausted her administrative remedies and received a final adverse determination from Anthem (*Id.* at ¶ 59). Alternatively, Plaintiff contends her administrative remedies are deemed exhausted under ERISA because Anthem failed to provide her with a reasonable claims procedure (*Id.* at ¶ 60). Defendant does not challenge this in its motion to dismiss.

[4] Although Plaintiff states in the Amended Complaint that the power of attorney is attached as an exhibit, it is not (Amend. Cmplt. at ¶ 66). It is in the record as an attachment to Plaintiff's response to Anthem's original motion to dismiss, however (Doc. 20, Exh. 2), and Anthem does not challenge its authenticity. *See Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019) ("A district court may also consider documents referenced in the complaint, even if they are not physically attached, if the documents are (1) central to the complaint and (2) no party questions their authenticity.") (*citing Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005)).

[5] Brannigan initially filed suit on behalf of K.P. and Jet ICU (Doc. 1). In May 2022, the Court adopted the undersigned's Report and Recommendation and granted Anthem's motion to dismiss Plaintiffs' original complaint as to Jet ICU on the grounds that Brannigan failed to demonstrate standing as the company's attorney-in-fact and, absent an assignment of benefits (prohibited under the policy), Jet ICU failed to allege independent standing under ERISA (*see* Docs. 33, 37). The Court also found that Plaintiffs failed to state an ERISA claim under Rule 12(b)(6) because they did not allege

asks for reimbursement pursuant to one of two methods. First, Plaintiff seeks reimbursement for the usual and customary provider charges for similar air ambulance services under Fla. Stat. §§ 627.64194 and 641.513(5) (Amend. Cmplt. at ¶ 42). Alternatively, Plaintiff asks for reimbursement at the out-of-network out-of-area rate for Jet ICU's services, as specified in K.P.'s Plan (*Id*. at ¶¶ 36-43).

Regarding the second method, Anthem (as required of every Blue Cross Blue Shield licensee) participates in the Blue Card Program and the National Accounts System (*Id*. at ¶ 44). Under this structure, Anthem is considered K.P.'s Home Plan, because it is the Blue Cross Blue Shield-affiliated insurer in the geographic area where K.P. is enrolled (South Carolina) (*Id*. at ¶¶ 47, 49). Florida Blue (also a Blue Cross Blue Shield licensee) is K.P.'s Host Plan, because it is the insurer in the geographic area where K.P. received services (Ft. Lauderdale) (*Id*. at ¶¶ 47, 50). Jet ICU is an out-of-network out-of-area provider with Anthem – it does not have a pre-negotiated contract with Anthem (out-of-network), and it provided services to K.P. outside of Anthem's geographic area (out-of-area) (*Id*. at ¶ 51). Because Jet ICU is an out-of-network out-of-area provider, the reimbursement methodology under K.P.'s Certificate requires the claim to be priced as required by state or federal law, local payment, or the provider's billed charges (*Id*. at ¶ 52).[6]

---

a Plan provision under which they sought recovery (*Id*.). Plaintiff filed an Amended Complaint (Doc. 38) on behalf of K.P. only.

[6] Plaintiff does not attach the health benefits booklet (the "Plan" or the "Certificate") to his Amended Complaint, but it is attached to Anthem's motion to dismiss (Doc. 43-1). The Court considers the Plan as part of the pleadings for purposes of Anthem's motion to dismiss, because Plaintiff references the Plan in the Amended Complaint, and it is

At this juncture, Anthem moves to dismiss the amended complaint, with prejudice, under Rule 12(b)(3), for improper venue (Doc. 43). Alternatively, Anthem moves the Court to transfer Plaintiff's case to the Southern District of Indiana, where Anthem's principal place of business is located (*Id.* at 12). Plaintiff responds that, because the Amended Complaint alleges Anthem may be "found" in the Middle District of Florida, venue is proper here under ERISA's venue provision (Doc. 44 at 5). Plaintiff urges the Court to deny Anthem's motion in its entirety but conceded at the hearing that venue is also proper in the Southern District of Indiana and in the District of South Carolina, where K.P. resides.

## II.   DISCUSSION

### A. Motion to Dismiss for Improper Venue

When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of showing that the venue it selected is proper. *See Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (explaining that the plaintiff must make "only a prima facie showing of venue"). "The facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by defendants' affidavits." *Id.* If an allegation in the complaint is challenged, the court may consider facts outside the complaint to determine whether venue is proper and "may make factual findings necessary to resolve motions to dismiss for improper venue." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008); *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D.

---

central to his claim. *See Day*, 400 F.3d at 1276; *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Fla. 2004). In examining the record, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id*.

Generally, venue in federal civil actions is governed by 28 U.S.C. § 1391. Under this section, venue is proper in: (1) the judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which a defendant is subject to the court's personal jurisdiction with respect to the action. 28 U.S.C. § 1391(b). ERISA, however, has its own venue provision that permits a plaintiff to bring a federal court action in either the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2).

The Eleventh Circuit has characterized this as a "liberal venue provision" designed to "provide broad access to the federal courts." *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1522 (11th Cir. 1987). In other words, "[t]he ERISA venue provision is intended to expand, rather than restrict, the range of permissible venue locations." *Varsic v. U.S. Dist. Ct. for Cent. Dist. Of Cal.*, 607 F.2d 245, 248 (9th Cir. 1979) (noting the use of the word "may" in the provision reflects that the three locations enumerated do not represent an exhaustive list of appropriate venue locations);[7] 14D Charles Alan

---

[7] *Varsic* is "the leading case interpreting § 1132(e)(2)'s venue provision." *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 809 (7th Cir. 2002); *Brown v. Montgomery*, No. CV-104-159, 2005 WL 8155496, at *2 n.8 (S.D. Ga. May 18, 2005).

Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 3825 (4th ed.) ("The ERISA venue provision is not exclusive."); *Presser v. Union Security Ins. Co.*, No. 17-cv-61184-BLOOM/Valle, 2017 WL 4476333, at * 6, n.2 (S.D. Fla. Oct. 6, 2017) (noting that an ERISA plaintiff may demonstrate proper venue under either ERISA's venue provision or under the federal venue statute).

In the amended complaint, Plaintiff invokes the general venue statute, 28 U.S.C. § 1391, and alleges venue is proper because Anthem "conducts a substantial amount of business" here, including "marketing, advertising and selling insurance products, and [it] insures and administers group healthcare insurance plans both inside and outside the Middle District of Florida." (Amend. Cmplt. at ¶ 13). In response to Anthem's motion to dismiss, Plaintiff appears to have abandoned this position and instead focuses on the third prong of ERISA's venue provision, arguing Anthem does business in Tampa and, consequently, "may be found" here (Doc. 44). Plaintiff relies on the affidavit of a private investigator who attests to visiting a Tampa office with "Simply Healthcare/Anthem" signage in March 2022 (Amend. Compt., Exh. 1). Attached to the investigator's affidavit are photographs of letter-sized signs bearing the Anthem logo taped to the door of an office (*Id.*, Exh. 2). This is "incontrovertible evidence of Anthem's presence in this District," according to Plaintiff (Doc. 44 at 6).

Anthem counters that ERISA's venue provision does not expand so far as to support venue in the Middle District of Florida. Anthem points out it is incorporated in Indiana, has its principal place of business in Indiana, and administers the Plan in

7

Indiana (Doc. 43, Exh. 1 at ¶¶ 3-5).[8]  According to Anthem, the only connection between this action and Florida is that Plaintiff received emergency medical care in Ft. Lauderdale (located in the Southern District of Florida), and Jet ICU (no longer a party) is based in the Middle District of Florida.

A defendant "resides or may be found" under the third option of ERISA's venue provision wherever it has sufficient minimum contacts to allow personal jurisdiction under *International Shoe Company v. Washington*, 326 U.S. 310 (1945), and its progeny. *Waeltz*, 301 F.3d at 810; *Gilmour*, 2019 WL 2147580, at *8; *Turner v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 7:14-cv-1244-LSC, 2015 WL 225495, at *3 (N.D. Ala. Jan. 16, 2015). Notably, Anthem unsuccessfully challenged personal jurisdiction in its first motion to dismiss (Doc. 19). In the undersigned's April 2022 Report and Recommendation (Doc. 33) (adopted by the district judge, Doc. 37), the Court recommended granting Defendant's motion based on lack of standing (as to Jet ICU) and failure to state a claim but rejected Anthem's personal jurisdiction argument. Specifically, the undersigned found that ERISA's nationwide service of process provision compels the conclusion that personal jurisdiction is satisfied because Anthem has minimum contacts with the United States. The Court stated:

---

[8] Anthem contends its alleged breach also took place in Indiana, where it made the decision to deny K.P.'s claim (Doc. 43 at 12). But the balance of case law interpreting ERISA's venue provision finds that a breach occurs where performance was to be rendered to the participant under the plan – in other words, South Carolina, where K.P. resides and would have received payment of benefits. *Gilmour, Trustee for Grantor Trusts v. Blue Cross & Blue Shield of Ala.*, Civ. No. SA-17-CA-518-FB, 2019 WL 2147580, at *8 (W.D. Tex. Mar. 6, 2019) (collecting cases); *Keating v. Whitemore Mfg. Co.*, 981 F.Supp. 890, 892 (E.D. Pa. 1997) (same); *but see Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan*, 481 F.Supp. 454, 459 (N.D. Ga. 1979) (finding that breach takes place in the district where the trustee stops payment on the plaintiff's check).

> But Anthem overlooks that "when the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States." *S.E.C. v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997) (collecting cases). Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), provides for nationwide service of process. So, under these circumstances, personal jurisdiction over Anthem is proper if it does not offend the Fifth Amendment's due process requirements. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) ("[W]hen, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process service from the *Fifth*, rather than the *Fourteenth*, Amendment.") (citations omitted) (emphasis in original).
>
> And, as the court found in *Worldwide Aircraft* [*Services, Inc. and Michael Brannigan v. Anthem Insurance Companies, Inc.*, Case No. 8:21-cv-456-CEH-AAS, Doc. 38, 2022 WL 797471 (M.D. Fla. Mar. 16, 2022)], "Anthem, an Indiana health insurance company, certainly has minimum contacts with the United States." 2022 WL 797471, at *5; *see also S.E.C. v. Marin*, 982 F.3d 1341, 1349-50 (11th Cir. 2020) (finding that where personal jurisdiction is based on federal statute authorizing nationwide service of process, applicable forum for minimum contacts purposes is the United States, not the state in which the district court sits); *Caudle v. Life Ins. Co. of N. Am.*, 33 F.Supp.3d 1288, 1292 (N.D. Ala. 2014) (noting that a defendant's contacts with the forum state play no "magical role" in the Fifth Amendment analysis when personal jurisdiction is based on nationwide service of process exception in federal statute) (citations omitted).

(Doc. 33 at 7-8).

That the Court has personal jurisdiction over Anthem does not mean that venue is necessarily proper, however. If venue were proper wherever a defendant could be served with process, this "would allow [for] nationwide venue, because § 1132(e)(2)'s nationwide service of process clause creates nationwide jurisdiction." *Waeltz*, 301 F.3d at 808.[9] "[T]he ERISA venue provision could not be intended to mean that a defendant

---

[9] Some courts have followed this reasoning and found that personal jurisdiction exists (and therefore venue is appropriate) wherever a defendant can be served under ERISA's nationwide service of process provision. *See Peay v. Bellsouth Med. Assistance Plan*, 205

9

is 'found' in every district, which would result if venue was proper everywhere a district court could exercise personal jurisdiction." *McFarland v. Yegen*, 699 F. Supp. 10, 14 (D.N.H. 1988) (citations omitted).  ERISA's venue provision is broad but not unlimited – it "may not be used to support venue in this bootstrap fashion.  Such an interpretation would subsume the other venue choices under the statute." *Fed. Prac. & Proc.* § 3825 (citing *Waeltz*, 301 F.3d at 808-09; *Laurent v. Pricewaterhousecoopers LLP*, 2005 WL 1221304 (S.D. Ill. 2005); and *McFarland*, 699 F.Supp. at 14); *see also* Rachel M. Janutis *Pulling Venue Up by its Own Bootstraps: The Relationship Among Nationwide Service of Process, Personal Jurisdiction and § 1391(c)*, 78 St. John's L. Rev. 37 (2004).  Put simply, minimum contacts for venue purposes under ERISA requires more than just minimum contacts with any of the 50 United States.  *See Stickland v. Trion Grp.*, 463 F.Supp.2d 921, 926-27 (E.D. Wis. 2006).  Instead, Anthem "may be found" in the Middle District of Florida if it has minimum contacts with this judicial district (if this district were a state), as that term is interpreted by *International Shoe* and its progeny.  *See Waeltz*, 301 F.3d at 807-10; *Alexandra H. v. Oxford Health Ins., Inc.*, No. 11-23948-CIV-ALTONAGA/Simonton, 2012 WL 13080210, at * 4 (S.D. Fla. Mar. 21, 2012); *Gilmour*, 2019 WL 2147580, at * 7-8.

Under *International Shoe*, to establish personal jurisdiction over a non-resident defendant in accordance with due process, the defendant must have minimum contacts with the judicial district and the maintenance of the suit must not "offend 'traditional notions of fair play and substantial justice.'" *Future Tech. Today, Inc. v. OSF Healthcare*

---

F.3d 1206, 1210 (10th Cir. 2000); *McCracken v. Auto Club. of S. Cal., Inc.*, 891 F. Supp. 559, 562-63 (D. Kan. 1995); *Stumpf v. Med. Benefits Admin'rs*, No. 99-cv-185, 2001 WL 1397326, at *2 (D. Neb. Mar. 13, 2001).

*Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (quoting *Int'l Shoe*, 326 U.S. at 316). Under the minimum contacts test, a corporate defendant may be subject to either general or specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction arises when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id*. (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)). "The 'paradigm' forums where a corporate defendant is 'at home' ... are the corporation's place of incorporation and its principal place of business." *Daimler A.G. v. Bauman*, 571 U.S. 117, 138 (2014)). But general jurisdiction may extend to a forum where the corporation's operations are "so substantial and of such a nature as to render the corporation at home in that state." *Id*. There is no test to follow when analyzing whether a defendant's activities within a judicial district are continuous and systematic; rather, "a court must look at the facts of each case to make such a determination." *Alexandra H.*, 2012 WL 13080210, at *5.

When the defendant's contacts with the forum "are not so pervasive as to subject him to general jurisdiction, the issue whether [specific] jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action." *Id*. (quoting *Varsic*, 607 F.2d at 249). In the Eleventh Circuit, this evaluation requires the defendant's contacts with the judicial district to meet these criteria: (1) the contacts must be related to the cause of action or have given rise to it; (2) the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum (invoking the benefits and protections of its laws);

11

(3) the contacts must be such that the defendant should reasonably anticipate being haled into court there. *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993). This three-part inquiry is referred to as purposeful availment, relatedness, and reasonableness. *Id*.

Anthem argues that venue is improper here because its principal place of business is in Indianapolis, and it "does not currently maintain, nor has it ever maintained, an office in the State of Florida." (Doc. 43 at 11). In a declaration attached to Anthem's motion to dismiss, Anthem president Beth Keyser attests that Anthem does not have a Florida telephone number or mailing address and does not "specifically direct advertising or promotional material to the State of Florida, including advertisements on television, radio, and in newspapers." (Doc. 43, Exh. 1 at ¶ 5). Countering Plaintiff's private investigator's affidavit, Ms. Keyser attests that the office the investigator visited is not Defendant's, it belongs to Simply Healthcare Plans, Inc., another (unrelated) corporate subsidiary of non-party Anthem, Inc. (*Id*. at ¶¶ 6-8). *See Bryant*, 530 F.3d at 1376 (to determine if venue is proper, court may consider facts outside four corners of complaint and "may make factual findings necessary to resolve motions to dismiss for improper venue."). In its motion, Anthem admits it filed an application with the Florida Division of Corporations in November 2021 (the month after Plaintiff filed suit) to transact business in the state (Doc. 43 at 11, n.1). And at the hearing, Anthem acknowledged the state approved this application in October 2022 (while Anthem's motion was pending), and it is now registered to do business in Florida.

These contacts with the Middle District of Florida are not "substantial" or "continuous or systematic." Even considering that Anthem is registered to do business in Florida, its contacts with this judicial district are not so pervasive as to subject Anthem to general jurisdiction here. *See Marrero v. State Farm Fire & Casualty Co.*, No. 3:20-cv-1147-MMH-JBT, 2021 WL 2555438, at * 3 (M.D. Fla. May 24, 2021) (allegation that defendant is privately held foreign profit corporation registered in the State of Florida is "plainly insufficient to make out a prima facie case for general jurisdiction."), *report and recommendation adopted*, 2021 WL 25551627 (June 22, 2021); *Israel v. Alfa Laval, Inc.*, No. 8:20-cv-2133-02AAS, 2020 WL 7640730, at * 3 (M.D. Fla. Dec. 23, 2020) ("[E]ven though Alfa Laval is registered to do business here, that alone is insufficient to confer [general] jurisdiction.").[10]

Absent general jurisdiction, the Court's analysis turns on the nature and quality of Defendant's contacts in relation to Plaintiff's cause of action to determine if specific jurisdiction exists. As alleged, Plaintiff relies solely on its private investigator's sworn statements that he visited a Tampa office that bore signage for "Simply Healthcare/Anthem" and his pictures of signs with the word "Anthem" in the corner (Amend. Cmplt., Exhs. 1, 2). This does not satisfy the test for specific jurisdiction. Even construing all factual conflicts in Plaintiff's favor, as the Court is required to do, Plaintiff does not allege that the Anthem office the investigator visited in Tampa is somehow

---

[10] In any event, Anthem filed its application to transact business in Florida after Plaintiff filed suit. "Federal courts applying the general-jurisdiction minimum contacts analysis have held that 'contacts after the filing of the complaint are not considered.'" *Frontline Int'l, Inc. v. Edelcar, Inc.*, No. 6:10-cv-1351-Orl-31DAB, 2011 WL 13209612, at *11 (M.D. Fla. Apr. 6, 2011) (quoting *Harlow v. Children's Hosp.*, 432 F.3d 50, 65 (1st Cir. 2005)); *see also* 4 *Fed. Prac. & Proc.* § 1067.5.

related to this action. *Cf. Merrero*, 2021 WL 2555438, at * 3, n.5 (plaintiff's allegation that defendant is registered to do business in Florida is insufficient to convey specific jurisdiction because plaintiff does not allege a connection between the registration and his claim). Venue is improper in this judicial district.

### B. Motion to Transfer Venue

As an alternative to dismissal, Defendant moves the Court to transfer the case. The parties agree that under ERISA's venue provision, Plaintiff could have filed this case in either the Southern District of Indiana or the District of South Carolina (where K.P. resides). But Defendant argues that transfer to the Southern District of Indiana is more efficient, as Anthem is headquartered in Indianapolis and administers the Plan there. Although the Middle District of Florida is Plaintiff's first venue choice, he filed a supplemental notice stating he prefers the District of South Carolina over the Southern District of Indiana (*see* Doc. 59).

If venue is improper in the district where the case is filed, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Courts have significant discretion in determining whether to dismiss or transfer an action. *Nat'l Trust Ins. Co. v. Penn. Nat'l Mut. Cas. Ins. Co.*, 223 F.Supp.3d 1236, 1241 (M.D. Fla. 2016). In general, transfer is preferable to dismissal – it saves the parties time, energy, money, and inconvenience. 14D Fed. Prac. & Proc. § 3827.

There is an additional basis supporting transfer. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Considering whether to transfer a case under this statute is a two-step inquiry. First, the court determines whether the case could have been filed in the proposed district. *Nat'l Trust Ins. Co.*, 223 F.Supp.3d at 1241 (citations omitted). Second, the court considers "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." *Eye Care Int'l, Inc. v. Underhill*, 119 F.Supp.2d 1313, 1318 (M.D. Fla. 2000).

In making this determination, courts weigh these factors: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's forum choice; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *Nat'l Trust Ins. Co.*, 223 F.Supp.3d at 1241 n.3. It is the movant's burden to establish that a case should be transferred to the suggested forum in the interests of convenience and justice. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

"The procedural posture of an ERISA claim for benefits after administrative appeal reduces the number of factors to consider upon a motion to transfer." *Kelling v. Hartford Life & Accident Ins. Co.*, 961 F.Supp.2d 1216, 1219 (M.D. Fla. 2013). At the

hearing, the parties agreed this case is limited to the administrative record, and K.P. most likely will not testify. In fact, most ERISA cases are decided on summary judgment, so no witnesses will be required to travel for trial. *See Crume v. Metropolitan Life Ins. Co.*, 417 F.Supp.2d 1258, 1273 (M.D. Fla. 2006) (explaining that summary judgment in favor of one party is typically the last step of an ERISA benefits case at the district court level). Consequently, the convenience of witnesses, location of documents, and availability of process to compel the attendance of unwilling witnesses is of little relevance. *Id.*; *see also Alexandra H.*, 2012 WL 13080210, at *8 (in ERISA action, court's review limited to administrative record, and it does not consider proof or testimony outside of administrative record). Additionally, the parties offered no argument on how the Court should weigh the relative means of the parties, and the Court considers this factor neutral. Regarding the forum's familiarity with the governing law, this is an action founded on federal law – Indiana and South Carolina courts are equally familiar with ERISA. *Id*.

The remaining factors are the convenience of the parties, the locus of operative facts, the weight accorded to Plaintiff's forum choice, and trial efficiency and the interests of justice. Because this is an ERISA case, it "resembles an appeal more than a triable action, [and] the convenience of the parties is not of any great weight." *Id*. Still, the Court assigns this factor some weight as Anthem's corporate headquarters is within the Southern District of Indiana, and it administers the Plan there (Doc. 43 at 11-12). On the other hand, Plaintiff does not argue (and therefore fails to demonstrate) the District of South Carolina is more convenient for him (*see* Doc. 59). Thus, it appears

16

that transferring this case to the Southern District of Indiana would inconvenience Plaintiff less than it would inconvenience Anthem to transfer the case to the District of South Carolina.

Regarding the locus of operative facts, this factor is not clear-cut – although the Middle District of Florida is not it, a case could be made for the Southern District of Indiana (the place where the Plan was administered), the District of South Carolina (the place of the denial of benefits/breach), or the Southern District of Florida (where K.P. received treatment). The final two factors are Plaintiff's forum choice and trial efficiency and the interests of justice. The Court generally weighs a plaintiff's forum choice heavily. But here, Plaintiff's forum choice is entitled to less weight. At the hearing, Plaintiff stated that because K.P. does not need to testify, he had not considered the District of South Carolina as a venue option. Only when the Court mentioned it did Plaintiff file a supplemental notice indicating his preference for the District of South Carolina over the Southern District of Indiana (Doc. 59). Anthem, on the other hand, argues the interests of convenience and justice weigh in favor of transferring the case to the Southern District of Indiana. Weighing these factors, the scales tip in favor of Anthem.

### III. CONCLUSION

The undersigned RECOMMENDS:

(1) Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 43) be DENIED;

(2) Defendant's Motion to Transfer (Doc. 43) be GRANTED; and

(3) The entire action be transferred to the Southern District of Indiana.

**IT IS SO REPORTED** in Tampa, Florida on November 7, 2022.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object under § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions in this Report and Recommendation. 11th Cir. R. 3-1.